UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BENCHMARK BRANDS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No.: _____ |
| | ) | |
| SOCK AND ACCESSORY BRANDS | ) | |
| GLOBAL, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORIGINAL COMPLAINT

Plaintiff, BENCHMARK BRANDS, INC., by and through its undersigned attorneys, hereby files this Complaint against Defendant, SOCK AND ACCESSORY BRANDS GLOBAL, INC., and in support thereof states as follows:

### PARTIES

1.      Plaintiff Benchmark Brands, Inc. ("Benchmark" or "Plaintiff") is a Tennessee corporation having its principal place of business at 5250 Triangle Parkway, Suite 200, Norcross, Georgia, 30092.

2.      On information and belief, Defendant Sock and Accessory Brands Global, Inc. ("SABG" or "Defendant") is a Delaware corporation having its principal place of business at 5380 U.S. Highway 158, Suite 250, Advance, North

Carolina, 27006.

## NATURE OF THE ACTION

3.     This is an action for preliminary and permanent injunctive relief and monetary damages arising out of Defendant's infringement of the Plaintiff's FOOTSMART trademark via the unauthorized use of a confusingly similar mark to sell competitive products in interstate commerce.  Defendant's infringement is likely to have caused and to continue to cause confusion in the minds of consumers.  The Defendant's actions further constitute unfair competition and deceptive trade practices under federal and state law insofar as they likely have misled and will continue to mislead the public as to the source of Defendant's products, thus damaging the goodwill in Benchmark's FOOTSMART trademark, and diverting to Defendant customers searching for Benchmark's own products. Claims for cancellation of Defendant's federal trademark registrations for its confusingly-similar mark and for unjust enrichment are also alleged.

## JURISDICTION AND VENUE

4.     This action arises in part under the trademark laws of the United States of America, 15 USC § 1051 *et seq*. This Court has subject-matter jurisdiction over the claims herein based on those statutes pursuant to 15 USC § 1121(a), and 28 USC §§ 1331 and 1338. This Court has supplemental jurisdiction

over the related state and common law claims pursuant to 28 USC § 1367(a) because they are derived from a common nucleus of operative fact that forms part of the same case or controversy.  In the alternative, federal diversity jurisdiction exists in this matter pursuant to 28 U.S.C. § 1332 because this is a matter between citizens of different states and the value of the matter in controversy exceeds the sum or value of $75,000.

5.      This Court has personal jurisdiction over the Defendant and venue is proper in this district because (a) Defendant has purposely availed itself of the benefits of this forum by conducting and soliciting business in Georgia, (b) the injury of Defendant's trademark infringement and related offenses will be felt mainly in Georgia, and (c) activities giving rise to the causes of action stated herein have been performed and continue to be performed in this district.

## BACKGROUND
### BENCHMARK'S BUSINESS AND FOOT CARE PRODUCTS

6.      For over 20 years, Benchmark has been in the business of selling a wide variety of products for the care and comfort of the lower body and the feet, including socks.

7.      In particular, Benchmark sells over 900 unique products for foot care, including socks and other products for the care and comfort of the lower body

(collectively the "Benchmark Products").

8.    Benchmark operates an extensive online store and a catalog-sales business, through which the Benchmark Products, including socks, are sold (collectively the "Benchmark Services"). Millions of households in the United States receive Benchmark's catalogs for foot care products and millions of unique visitors have visited Benchmark's website, www.footsmart.com, including 8,000,000 in the past twelve (12) months alone.   Benchmark provides the Benchmark Services and sells the Benchmark Products, including socks, to customers throughout the United States, including in Georgia and this judicial district.   Over 1,000,000 consumers across the nation have purchased from Footsmart within the past twelve (12) months.

## BENCHMARK'S TRADEMARK

9.    Benchmark has adopted and uses the trademark FOOTSMART in connection with the promotion, marketing and sale of the Benchmark Products, including socks, and in connection with providing the Benchmark Services. For example, Benchmark has used and continues to use the FOOTSMART trademark in the form of the design mark **FootSmart** in connection with the sale of Benchmark Products, including socks, and with providing the Benchmark Services.

4

10.     Benchmark has been using the FOOTSMART trademark in interstate commerce in connection with Benchmark Products and Benchmark Services since at least as early as 1995. Benchmark has been using the FOOTSMART trademark, including the aforementioned design mark, on and in connection with the sale of socks in interstate commerce since at least as early as 1997.

11.     Benchmark has spent nearly two decades and hundreds of millions of dollars to promote and advertise the Benchmark Products and Benchmark Services under and in connection with the FOOTSMART mark.

12.     Through exclusive and continuous use of the trademark FOOTSMART in connection with the Benchmark Products, including socks, and the Benchmark Services throughout the United States and in this state, the Plaintiff has acquired and owns valuable common-law rights therein in connection with such goods and services.

13.     As a result of the foregoing extensive marketing activities and sales for nearly two decades, consumers have come to recognize the FOOTSMART trademark (including the  design mark) to denote products and services relating to foot-care and foot-health emanating from Benchmark as the sole source thereof.

14.     In addition to its common-law rights resulting from the foregoing

5

activities, the Plaintiff also owns numerous U.S. Trademark Registrations for its FOOTSMART mark in connection with products and services relating to foot care and foot health, including socks.

15.   In particular, Benchmark owns U.S. Trademark Registration No. 2,747,881 (the " '881 registration") for FOOTSMART in connection with socks, hosiery, shoes and slippers.  The '881 registration is valid and subsisting, and is incontestable pursuant to 15 USC § 1065.  A true and correct copy of the '881 registration is attached as Exhibit A.

16.   Benchmark also owns U.S. Trademark Registration No. 2,091,620 (the " '620 registration") for FOOTSMART in connection with cushion insoles and inserts for footwear.  The '620 registration is valid and subsisting, and is incontestable pursuant to 15 USC § 1065.  A true and correct copy of the '620 registration is attached as Exhibit B.

17.   Benchmark also owns U.S. Trademark Registration No. 2,687,150 (the " '150 registration") for FOOTSMART in connection with cushions for the treatment of corns, calluses, bunions and blisters.  The '150 registration is valid and subsisting, and is incontestable pursuant to 15 USC § 1065.  A true and correct copy of the '150 registration is attached as Exhibit C.

18.   Benchmark also owns U.S. Trademark Registration No. 2,599,053

(the " '053 registration") for FOOTSMART in connection with orthopedic supports, namely, knee braces, ankle braces and arch braces.  The '053 registration is valid and subsisting, and is incontestable pursuant to 15 USC § 1065.  A true and correct copy of the '053 registration is attached as Exhibit D.

19.    Benchmark also owns U.S. Trademark Registration No. 2,767,304 (the " '304 registration") for FOOTSMART in connection with corn, callus and pedicure implements, namely abrasive files, trimmers, nail nippers and nail scissors.   The '304 registration is valid and subsisting, and is incontestable pursuant to 15 USC § 1065.  A true and correct copy of the '304 registration is attached as Exhibit E.

20.    Benchmark also owns U.S. Trademark Registration No. 2,132,440 (the " '440 registration") for FOOTSMART in connection with catalogs featuring foot-care and foot health products.  The '440 registration is valid and subsisting, and is incontestable pursuant to 15 USC § 1065.  A true and correct copy of the '440 registration is attached as Exhibit F.

21.    Benchmark also owns U.S. Trademark Registration No. 3,314,152 (the " '152 registration") for FOOTSMART in connection with an online retail store featuring foot care and foot health products.  The '152 registration is valid and subsisting, and is incontestable pursuant to 15 USC § 1065.  A true and correct

copy of the '152 registration is attached as <u>Exhibit G</u>.

22.    Benchmark also owns U.S. Trademark Registration No. 3,852,694 (the " '694 registration") for the design mark **FootSmart** in connection with catalogs featuring foot-care and foot health products.  The '694 registration is valid and subsisting.  A true and correct copy of the '694 registration is attached as <u>Exhibit H</u>.

23.    Benchmark has additional registrations and pending applications to register its FOOTSMART trademark in connection with goods and services related to foot care and foot health, including U.S. Trademark Appl'n Ser. No. 85/580,197 for FOOTSMART in connection with, *inter alia*, socks, hosiery and foot-care products.  The '197 application was published for opposition February 18, 2014 and should proceed to registration in due course.

24.    The FOOTSMART trademark that is the subject of each of the foregoing federal trademark registrations (and applications) is and has been in continuous use in interstate commerce by Benchmark in connection with the goods and services recited therein.

25.    Further, Benchmark spends over 25,000,000 annually to publicize, advertise, promote and sell the Benchmark Products and the Benchmark Services, including the goods and services listed in the aforementioned federal registrations,

under and in connection with the FOOTSMART trademark. Accordingly, Benchmark owns that mark in connection with the aforementioned goods and services in the United States, and is entitled to the exclusive use thereof in connection with the sale of foot-care and foot-health products and related services.

26.     As a result of the foregoing activities to publicize the registered FOOTSMART trademark, as well as extensive sales in the United States dating back nearly 20 years, the FOOTSMART mark (including the aforementioned design mark) has become and is famous.

### DEFENDANT'S INFRINGING ACTIVITIES

27.     On information and belief, SABG was founded in 1999 as a small operation marketing private label socks in Pinehurst, North Carolina. SABG subsequently obtained licenses for various brands and developed a business selling socks and related accessories under licensed brands. Defendant did not, however, seek or obtain a license to sell socks or related accessories using Plaintiff's FOOTSMART trademark or any mark confusingly similar thereto. Instead, Defendant has marketed its socks in such a way as to capitalize on the goodwill developed by and associated with Plaintiff's FOOTSMART mark, using a confusingly similar mark and a similar promotional message that emphasizes comfort, innovation and intelligence.

28.     On information and belief, in or about 2013, long after Benchmark began using and had established its rights in the FOOTSMART trademark for foot-care and foot-health products, including socks, Defendant launched a new brand of socks using the confusingly similar mark SMARTFEET[1].

29.     Benchmark did not license, authorize, or otherwise approve of Defendant's use of the mark SMARTFEET for the sale of socks or any other foot-care or foot-health products.

30.     In connection with its sales and attempts to sell at least socks under the trademark SMARTFEET, Defendant uses and does business in interstate commerce.

31.     Defendant's use of the SMARTFEET trademark in connection with the promotion, advertising and sale of socks and/or other foot-care or foot-health products is likely to cause confusion in the minds of consumers as to the source, origin, sponsorship or affiliation of the SMARTFEET products.

32.     Ordinary consumers of socks are likely to mistakenly believe that Defendant's SMARTFEET-brand socks emanate from or are licensed or endorsed

---

[1] SABG sometimes uses this mark as two words, "SMART FEET," and sometimes as one word, "SMARTFEET."  For brevity herein, only the single-word form is used.  However, both are clearly confusingly similar to FOOTSMART.

by Benchmark because they will confuse that mark with Benchmark's FOOTSMART trademark on the same goods.

33.    The Defendant's SMARTFEET mark mimics and merely reverses the order of the elements in Benchmark's FOOTSMART mark.  Consumers are likely to fail to notice that the elements of the mark have been transposed, thus resulting in confusion that the marks are the same or emanate from the same source.

34.    The similarities between SABG's SMARTFEET mark and Benchmark's FOOTSMART mark are such that their common use on the same or similar goods, such as socks, is likely to cause confusion and mistake in the minds of consumers as to the source of such goods.

35.    The resulting confusion is damaging to Benchmark and to the goodwill in its FOOTSMART trademark, and is also detrimental to the public.

36.    In addition to the foregoing, on information and belief SABG is using or will use at least three different design marks embodying the SMARTFEET word mark in connection with socks, including the following mark: .

37.    In addition to its confusing similarity with Benchmark's FOOTSMART mark based on the word portion alone, this particular design mark

shares additional similarities with and creates a similar commercial impression as Benchmark's own **FootSmart** design mark, thus exacerbating the likelihood of confusion.

38.    When Defendant's use of the SMARTFEET mark came to the attention of Benchmark, Benchmark promptly informed Defendant of its rights and registrations and requested that Defendant cease using SMARTFEET as a trademark for socks, but SABG refused to comply with Benchmark's request.

39.    As a result of the fame and renown of Benchmark's FOOTSMART mark for foot-care and foot-health products, including socks, and considering that Defendant specializes in the sale of branded socks and related accessories, it is likely that Defendant was aware of Benchmark's trademark at the time Defendant's use began, and that it has remained aware that such use is infringing. Plaintiff therefore believes that the Defendant's infringement has been willful, with the intent to trade on Plaintiff's goodwill in the FOOTSMART trademark.

### CAUSES OF ACTION
### COUNT I: TRADEMARK INFRINGEMENT

40.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this complaint as if fully rewritten.

41.    Defendant SABG has used and continues to use the SMARTFEET

trademark on and in connection with the sale of at least socks in interstate commerce and without the Plaintiff's consent.

42. Such use likely has caused and will continue to cause confusion or mistake, or to deceive consumers, as to the true source or origin of the products that Defendant marks with the SMARTFEET mark.

43. Moreover, any defects in workmanship, quality or service associated with socks or other foot-care products marked with the SMARTFEET trademark will be attributed to the Plaintiff, thus damaging Plaintiff's reputation and the goodwill in its registered FOOTSMART mark.

44. The above actions of Defendant constitute trademark infringement pursuant to 15 USC § 1114(1)(a)-(b).

45. The Defendant's use of the SMARTFEET mark (including its associated design mark as described above) in connection with the sale of socks and possibly other foot-care products enables Defendant to trade on the goodwill in Plaintiff's registered FOOTSMART mark, causing irreparable damage to Benchmark and its goodwill.

46. Benchmark also has suffered and continues to suffer monetary damages at least commensurate with Defendant's profits, as well as its own actual damages in an amount not yet known but to be proven at trial.

13

47. Accordingly, Plaintiff is entitled to an injunction pursuant to 15 USC § 1116(a) to prevent further acts of infringement, an order for the destruction of infringing articles bearing the SMARTFEET trademark or any mark confusingly-similar thereto pursuant to 15 USC § 1118, and an award of up to three times its actual damages as the Court considers just, as well as costs and Defendant's profits pursuant to 15 USC § 1117(a)(1)-(3).

48. If it is proven that Defendant's infringement has been willful, Plaintiff will also be entitled to judgment that this is an exceptional case and consequent award of its reasonable attorneys' fees pursuant to 15 USC § 1117(a)(3).

**WHEREFORE** Plaintiff respectfully prays that this Court enter such orders, judgments and injunctions as are necessary to provide the following relief:

(a) a preliminary and then a permanent injunction against Defendant's infringement of Plaintiff's registered marks, including any and all confusingly similar variants thereof in accordance with 15 USC § 1116;

(b) an award of up to three times actual damages as the Court considers just in accordance with 15 USC § 1117(a);

(c) an award of defendant's profits in accordance with 15 USC § 1117(a);

(d)     an award of exemplary damages in accordance with 15 USC § 1117(a);

(e)     an award of attorney's fees and costs in accordance with 15 USC § 1117(a); and

(f)     any such other and further relief that this Court deems just and proper.

## COUNT II: UNFAIR COMPETITION – FEDERAL LANHAM ACT

49.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this complaint as if fully rewritten.

50.     Defendant has no license or right from Benchmark to use its FOOTSMART trademark or its **FootSmart** design mark or any marks confusingly similar thereto (including SMARTFEET) in connection with the sale of socks or other foot-care products.

51.     Defendant's use of the trademark SMARTFEET in interstate commerce is likely to cause confusion, or to cause mistake, or to deceive as to the existence of an affiliation, connection, or association between the Plaintiff and Defendant, or as to the origin of at least Defendant's socks bearing the

SMARTFEET mark. Consumers viewing Defendant's mark on socks will mistakenly believe that those products are authorized by, affiliated with or endorsed by Benchmark, or that Defendant's products are sourced from Benchmark.

52. Defendant's  design mark is also independently confusingly similar to Plaintiff's  design mark. These two design marks share additional similarities beyond the confusingly-similar word elements, which similarities create a similar commercial impression that will cause source confusion in the minds of consumers when used on the same or similar goods.

53. Accordingly, Defendant's use of the SMARTFEET trademark, with or without its aforementioned design elements, constitutes unfair competition in violation of 15 USC §1125(a).

54. Defendant's use of the SMARTFEET mark (including as the  design mark) in connection with the sale of socks and possibly other foot-care products enables Defendant to trade on the goodwill in Plaintiff's registered FOOTSMART mark, as well as in its registered and common-law  design mark, causing irreparable damage to Benchmark and its

16

goodwill.

55.    Due to Defendant's unfair competition, Benchmark  has suffered and continues to suffer monetary damages at least commensurate with Defendant's profits, as well as its own actual damages in an amount not yet known but to be proven at trial.

56.    Accordingly, Plaintiff is entitled to an injunction pursuant to 15 USC § 1116(a) to prevent further acts of unfair competition, an order for the destruction of infringing articles bearing the SMARTFEET mark pursuant to 15 USC § 1118 and an award of up to three times its actual damages as the Court considers just, as well as its costs and the Defendant's profits pursuant to 15 USC § 1117(a)(1)-(3).

57.    Moreover, if it is proven that the Defendant's acts of unfair competition have been committed willfully, Plaintiff will be entitled to judgment that this is an exceptional case and consequent award to the Plaintiff's its reasonable attorneys' fees pursuant to 15 USC § 1117(a)(3).

**WHEREFORE** Plaintiff respectfully prays that this Court enter such orders, judgments and injunctions as are necessary to provide the following relief:

(a)    a preliminary and then a permanent injunction against Defendant's infringement of Plaintiff's protectable marks, including any and all confusingly similar variants thereof in accordance with 15 USC § 1116;

17

(b)     an award of up to three times its actual damages as the Court considers just in accordance with 15 USC § 1117(a);

(c)     an award of defendant's profits in accordance with 15 USC § 1117(a);

(d)     an award of exemplary damages in accordance with 15 USC § 1117(a);

(e)     an award of attorney's fees and costs in accordance with 15 USC § 1117(a); and

(f)     any such other and further relief that this Court deems just and proper.

### COUNT III: TRADEMARK DILUTION UNDER FEDERAL LAW

58.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this complaint as if fully rewritten.

59.     Through continuous and substantial promotion, marketing, advertising and sales throughout the United States, Benchmark's FOOTSMART mark has become and is recognized as a famous mark in this country.

60.     Benchmark's FOOTSMART mark became famous prior to Defendant's commencement of use of the SMARTFEET mark.

61.     Defendant's use of the trademark SMARTFEET, which mimics

18

Benchmark's famous FOOTSMART mark by merely reversing the order of the elements and pluralizing the word "foot," is likely to cause dilution by blurring Benchmark's famous mark through impairment of the distinctive character thereof.

62.    In addition, flaws or defects in workmanship in any of Defendant's products or services marketed or sold under the SMARTFEET mark are also likely to cause dilution by tarnishment of Plaintiff's famous mark, by harming the reputation of that mark.

63.    Accordingly, Plaintiff is entitled to an injunction to halt Defendant's continued use of the SMARTFEET mark pursuant to 15 USC § 1125(c)(1).

64.    If it is proven that Defendant willfully intended to trade on the recognition of Benchmark's famous FOOTSMART mark, Plaintiff will further be entitled to an award of up to three times its actual damages, as well as it costs and attorneys' fees and the Defendant's profits pursuant to 15 USC § 1117(a)(1)-(3).

**WHEREFORE** Plaintiff respectfully prays that this Court enter such orders, judgments and injunctions as are necessary to provide the following relief:

(a)    a preliminary and then a permanent injunction against Defendant's use of Plaintiff's protectable marks, including any and all confusingly similar variants thereof in accordance with 15 USC §§ 1116 and 1125(c)(1);

19

(b)   an award of up to three times actual damages in accordance with 15 USC §§ 1117(a) and 1125(c)(5);

(c)   AN AWARD OF DEFENDANT'S PROFITS IN ACCORDANCE WITH 15 USC § 1117(A);

(d)   an award of exemplary damages in accordance with 15 USC §§ 1117(a) and 1125(c)(5);

(e)   an award of attorney's fees and costs in accordance with 15 USC §§ 1117(a) and 1125(c)(5); and

(f)   any such other and further relief that this Court deems just and proper.

### COUNT IV: COMMON-LAW TRADEMARK INFRINGEMENT

65.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this complaint as if fully rewritten.

66.   Plaintiff has continuously and exclusively used the trademark FOOTSMART throughout the United States, including in this state and judicial district, in connection with the marketing, promotion and sale of foot-care and foot-health products since at least as early as 1995. Plaintiff's use of that mark specifically on socks has been continuous and exclusive throughout the United States and in this state since at least as early as 1997.

20

67.    During that time, Plaintiff has used the FOOTSMART mark as part of the design mark **FootSmart** in connection with such products.

68.    As a result of such activities, in addition to its statutory rights pursuant to its federal trademark registrations, Benchmark owns common-law rights in the FOOTSMART trademark, including in its **FootSmart** design mark, in connection with foot-care and foot-health products and associated sales services, including socks, sold in Georgia and elsewhere.

69.    Defendant has no license or right from Benchmark under any of Benchmark's common-law rights to use the FOOTSMART word mark, the aforementioned design mark, or any other mark confusingly similar thereto in connection with socks or any other foot-care products.

70.    Defendant's unauthorized use of the mark SMARTFEET in connection with the sale of at least socks, and possibly other foot-care products, likely has caused and will continue to cause confusion as to the source or origin of those products.

71.    Separately, Defendant's unauthorized use of the **Smartfeet** design mark in connection with the sale of socks, and possibly other foot-care products, exacerbates the likelihood of confusion with Benchmark's own

21

**FootSmart** design mark for the same goods. These two design marks share additional similarities beyond the confusingly-similar word elements, which similarities create a similar commercial impression that will cause source confusion in the minds of consumers when used on the same or similar goods.

72.     Consumers who encounter and purchase the Defendant's products advertised, distributed or sold with the SMARTFEET (word or design) trademark likely have been and will continue to be confused into mistakenly believing that those products are authorized by, affiliated with, endorsed by or sourced from the Plaintiff.

73.     Moreover, any defects in workmanship, quality or service associated with such products will be erroneously attributed to the Plaintiff, thus damaging its reputation and the goodwill in its common-law trademark rights.

74.     The Defendant's actions constitute infringement of Benchmark's common-law trademark rights, resulting in irreparable harm to Benchmark for which there is no adequate remedy at law, and which will continue unless enjoined by this Court.

75.     In addition, Benchmark has suffered and continues to suffer monetary damage as a result of the Defendant's infringement in an amount not yet known but to be proven at trial.

**WHEREFORE** Plaintiff respectfully prays that this Court enter such orders, judgments and injunctions as are necessary to provide the following relief:

(a)     a   preliminary   and   then   permanent   injunction   against Defendant's infringement of Plaintiff's protectable marks, including any and all confusingly similar variants thereof;

(b)     an award of compensatory damages under this Count IV;

(c)     AN AWARD OF DEFENDANT'S PROFITS UNDER THIS COUNT IV;

(d)     an award of punitive damages under this Count IV; and

(e)     any such other and further relief as this Court deems just and proper.

### COUNT V: TRADEMARK DILUTION UNDER GEORGIA LAW

76.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this complaint as if fully rewritten.

77.     Defendant's SMARTFEET trademark (including the associated

 design mark) is the same or similar to Plaintiff's FOOTSMART trademark (including the associated  design mark).

78.     Defendant's  use  of  the  SMARTFEET  trademark  and  associated design mark, which mimic Benchmark's FOOTSMART trademark and associated

design mark by merely reversing the order of the elements and pluralizing the word "foot," is likely to cause dilution by blurring Benchmark's famous mark through impairment of the distinctive character thereof.

79.    In addition, flaws or defects in workmanship in any of Defendant's products or services marketed or sold under the SMARTFEET trademark and associated design mark are also likely to cause dilution by tarnishment of Plaintiff's mark, by harming the reputation of that mark.

80.    Pursuant to O.C.G.A. §10-1-451(b), Plaintiff is entitled to an injunction to enjoin Defendant's use of its SMARTFEET trademark and associated  design mark.

**WHEREFORE** Plaintiff respectfully prays that this Court enter such orders, judgments and injunctions as are necessary to provide the following relief:

(a)    a preliminary and then permanent injunction against Defendant's use of the SMARTFEET mark with or without design elements, as well as any other marks that are similar to Benchmark's FOOTSMART mark, and

(b)    any such other and further relief as this Court deems just and proper.

24

## COUNT VI: CANCELLATION OF U.S. TRADEMARK REG. NO. 3,926,910

81.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this complaint as if fully rewritten.

82.    Defendant is the registrant of U.S. Trademark Registration No. 3,926,910 for the mark SMART FEET for socks (hereafter the " '910 registration"), issued by the United States Patent and Trademark Office.

83.    The '910 registration was issued March 1, 2011 on application Ser. No. 77/979,411, which was originally filed July 29, 2008 on an intent-to-use basis.

84.    Benchmark's common-law and statutory rights in its registered FOOTSMART mark for socks and other foot-care products and related sales services significantly predate any rights that Defendant could claim to have established in the confusingly similar SMART FEET mark that is the subject of the '910 registration.

85.    The continued subsistence of the '910 registration creates a presumption of ownership of the confusingly similar mark SMART FEET and of that mark's validity, in contravention and derogation of the superior rights Benchmark owns in its registered FOOTSMART mark for identical and highly related goods and services.

86.    Accordingly, the '910 registration was improvidently issued, and

Benchmark is entitled to an order compelling cancellation of that registration pursuant to 15 USC § 1119.

**WHEREFORE** Plaintiff respectfully prays that this Court enter such orders, judgments and injunctions as are necessary to provide the following relief:

(a)     an order directing the United States Patent and Trademark Office to cancel U.S. Trademark Registration No. 3,926,910.

### COUNT VII: CANCELLATION OF U.S. TRADEMARK REG. NO. 4,026,463

87.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this complaint as if fully rewritten.

88.     Defendant is the registrant of U.S. Trademark Registration No. 4,026,463 for the mark SMART FEET for baby booties (hereafter the " '463 registration"), issued by the United States Patent and Trademark Office.

89.     The '463 registration was issued September 13, 2011 on application Ser. No. 77/534,053, which was originally filed July 29, 2008 on an intent-to-use basis.

90.     Benchmark's common-law and statutory rights in its registered FOOTSMART mark for socks and other foot-care products and related sales services significantly predate any rights that Defendant could claim to have established in the confusingly similar SMART FEET mark that is the subject of the

''463 registration.

91.    Notably, "baby booties," for which the SMART FEET mark was registered in the '463 registration, are a category of socks.

92.    Benchmark used its FOOTSMART mark for socks, as well as a very large variety of other foot-care and foot-health products, for more than a decade before Defendant filed the application that matured into the '463 registration. Accordingly, and for other reasons set forth hereinabove, consumers are likely to mistakenly presume that "baby booties" (which are socks) bearing a mark that is confusingly similar to FOOTSMART, i.e., the SMART FEET mark in the '463 registration, emanate from or are sponsored or endorsed by Benchmark.

93.    The continued subsistence of the '463 registration creates a presumption of ownership of the confusingly similar mark SMART FEET and of that mark's validity, in contravention and derogation of the superior rights Benchmark owns in its registered FOOTSMART mark for identical and highly related goods and services.

94.    Accordingly, the '910 registration was improvidently issued, and Benchmark is entitled to an order compelling cancellation of that registration pursuant to 15 USC § 1119.

27

**WHEREFORE** Plaintiff respectfully prays that this Court enter such orders, judgments and injunctions as are necessary to provide the following relief:

(a)   an order directing the United States Patent and Trademark Office to cancel U.S. Trademark Registration No. 4,026,463.

### COUNT VIII: UNJUST ENRICHMENT

95.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this complaint as if fully rewritten.

96.   Defendant has been unjustly enriched to the detriment of Plaintiff by gains, profits and advantages obtained by infringing Benchmark's registered FOOTSMART trademark as well as Benchmark's common-law rights therein, thereby improperly receiving the benefit of Plaintiff's advertising and promotional activities, and resulting goodwill, all without authorization from and in direct competition with Plaintiff.

97.   These activities have unjustly enriched Defendant in an amount to be proven at trial.

**WHEREFORE** Plaintiff respectfully prays that this Court enter such orders, judgments and injunctions as are necessary to provide the following relief:

(a)     a preliminary and permanent injunction barring Defendant's inequitable use of Plaintiff's protectable marks, including any and all confusingly similar variants thereof;

(b)     an award of restitution to Plaintiff sufficient to disgorge Defendant's unjust enrichment under this Count VIII; and

(c)     any such other and further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED this 13th day of August, 2014.

**Maxwell & Anderson, LLC**

_____/s/ Luke Anderson_____
Luke Anderson
   (GA Bar No. 018330)
Landerson@MaxwellAndersonLaw.com
Telephone:  404-991-2241
Fax:         404-935-0927

David M. Maxwell
   (GA Bar No. 478715)
Dmaxwell@MaxwellAndersonLaw.com
Telephone:  404-334-7206
Fax:         404-935-0927

1230 Peachtree St., NE
Suite 1900
Atlanta, Georgia 30309
***Attorneys for Plaintiff Benchmark Brands, Inc.***

29

**OF COUNSEL**:

Michael P. Padden  (IL Bar 6183992)
  (*Pro Hac Vice admission to be filed.*)
*mpadden@pearne.com*
Steven J. Solomon (OH Bar 0076876)
  (*Pro Hac Vice admission to be filed.*)
*ssolomon@pearne.com*
**PEARNE & GORDON LLP**
1801 East 9th Street, Suite 1200
Cleveland, Ohio 44114
Telephone: (216) 579-1700
Facsimile: (216) 579-6073
***Attorneys for Plaintiff Benchmark Brands, Inc.***

---

### Local Rule 7.1(D) Certification

The above signed counsel hereby certifies that the within and forgoing pleading complies with Local Rule 7.1(D) since it was prepared in Times New Roman, 14 point font.

---